# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| WESTERN SURETY COMPANY | CIVIL ACTION |
|---|---|
| VERSUS | |
| PASI OF LA, INC., ET AL. | NO. 17-1643-JWD-RLB |

## ORDER

Before the Court is Defendants' Motion to Compel Discovery and Unopposed Motion for Expedited Consideration (R. Doc. 31) filed on July 6, 2018. The Motion is Opposed. (R. Doc. 36).

**I.  Background**

Plaintiff, Western Surety Company ("Plaintiff" or "Western"), initiated this litigation with the filing of its Complaint (R. Doc. 1) on November 9, 2017. Western is seeking to recover settlement amounts plus costs it paid to a third party, Harry Pepper & Associates, Inc. ("HPA"). The claims arise out of work that was to be performed under a contract between HPA and NASA at the John C. Stennis Space Center in Mississippi. HPA, the general contractor, entered into a subcontract with Defendant PASI for a portion of the work. Western issued a Subcontract Performance Bond and a Subcontract Payment Bond for PASI's scope of work, and alleges the named Defendants executed a General Indemnity Agreement in favor of Western.

In January of 2015, HPA notified PASI that it was in default on the subcontract, which subcontract was then terminated in February of 2015. (R. Doc. 1 at 6-7). HPA made demand on Western under the Subcontract Performance Bond, which then made demand on the Defendant-indemnitors under the General Indemnity Agreement. (R. Doc. 1 at 7). HPA filed suit against Western in May of 2016. (R. Doc. 1 at 7). Western settled HPA's claims against it in August of

2017. (R. Doc. 1 at 8). HPA also filed suit against PASI arising out of the subcontract, which claims were referred to arbitration. (R. Doc. 31-1 at 4). The arbitration was heard in December of 2017 and, in January of 2018, the arbitration panel issued its final award, ordering HPA to pay damages to PASI, and finding PASI to have no liability. (R. Doc. 31-1 at 4; R. Doc. 31-6 at 10-12).

Western is seeking to recover the sums it paid to HPA in settlement, in addition to costs and attorney's fees, pursuant to the General Indemnity Agreement executed by Defendants. (R. Doc. 1).

## II. Law and Analysis

### A. Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

A party must respond or object to a request for production within 30 days after service of the discovery. *See* Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

Rule 26 provides that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). This Court's local rules require that any privilege log must contain "at least the following information: name of the document, electronically stored information, or tangible things; description of the document, electronically stored information, or

tangible thing, which description must include each requisite element of the privilege or protection asserted; date; author(s); recipient(s); and nature of the privilege." LR 26(c).

**B.	Analysis**

Defendants seek to compel responses to their Request for Production Nos. 8-10, which seek the following:

> **Request for Production No. 8**:	Please produce any and all correspondence or other documents, including reports (both drafts and final), as well as correspondence, including oral, written or electronic communications, and invoices, by and between Western and **Roberts, Taylor & Sensabaugh** relating to the Project.
>
> **Request for Production No. 9**:	Please produce any and all correspondence or other documents, including reports (both drafts and final), as well as correspondence, including oral, written or electronic communications, and invoices, by and between Western and **Cypress Consulting** relating to the Project.
>
> **Request for Production No. 10**:	Please produce any and all correspondence or other documents, including reports (both drafts and final), as well as correspondence, including oral, written or electronic communications, and invoices, by and between Western and **Wright, Green, P.C**.

(R. Doc. 31-2 at 5). Plaintiff objected to these requests on the grounds of attorney-client and/or work product privilege.[1]

Defendants argue in their Motion that the documents they seek to compel fall into the following two categories: (1) original invoices for professional fees upon which Plaintiff seeks recovery; and (2) correspondence by and between Plaintiff and its attorneys and consultants relating to the settlement for which it seeks to recover. (R. Doc. 31 at 1). Defendants posit this information is not privileged, or Plaintiff has waived any applicable privilege, because it has put the documents "at issue" based on the claims it brought. (R. Doc. 31 at 1). Plaintiff, in turn,

---

[1] It is unclear whether Western provided Defendants with a privilege log required under Fed. R. Civ. P. 26(b)(5)(A) and Local Rule 26(c), though the Court notes that Defendants have not sought to compel a privilege log.

argues that the General Indemnity Agreement is controlling such that the "at issue" doctrine does not apply. (R. Doc. 36 at 8).

In its Complaint, Plaintiff alleges that it made certain settlement payments and accrued attorney's fees and other costs in connection with a Performance Bond, seeking indemnity for those payments from Defendants, who have executed a General Indemnity Agreement.

Defendants submit certain affirmative defenses, including that "all or a portion of the losses sustained by Western resulting from the acts and/or omissions of Western in connection with its handling of the claim," "lack of good faith," that Western settled with HPA despite its own investigation revealing that HPA's claims "lacked merit," and an existing business relationship with HPA or an affiliate that "potentially impact[ed] and/or prejudice[ed] Western's handling and/or defense of Harry Pepper's claim." (R. Doc. 18 at 1-3).

"Parties may generally obtain discovery so long as it is 'relevant to any party's claim or defense' and 'appears reasonably calculated to the discovery of admissible evidence.'" *Fannie Mae v. Hurst*, 613 Fed. App'x 314, 316-17 (5th Cir. 2015) (citing Fed. R. Civ. P. 26(b)(1)). Defendants argue the documents sought are relevant to their affirmative defense that Plaintiff lacked good faith in making the settlement payment and accruing the costs it seeks to recover, including reasonableness of such fees and costs, such that any privilege should be disregarded.

Defendants have challenged Plaintiff's entitlement to reimbursement under the General Indemnity Agreement on the grounds of reasonableness and good faith, and seek documents that they believe would assist in proving their defenses, i.e., that the settlement and/or costs were unreasonable, and the amounts expended in settlement and/or costs were paid in bad faith.

Plaintiff argues that the language of the General Indemnity Agreement defines the scope of discoverable documents, and that it will not have to rely on the documents sought by

Defendants such that it has not put those documents "at issue" for purposes of waiver of any applicable privilege. (R. Doc. 36 at 2). In relevant part, the agreement reads as follows:

> In the event of any payments made by the Surety in the good faith belief of their necessity, the Indemnitors agree to accept the voucher or other evidence of such payments as prima facie evidence of the propriety thereof, and of the Indemnitors' liability therefore to the Surety;

(R. Doc. 36-1 at 2).

The agreement also provides that:

> The Surety shall have the exclusive right and power to determine for itself and the Indemnitors and Principals whether any claim, suit, or assertion of liability against the Surety or the Principal upon any Bond shall be settled, compromised, tendered, or defended. The Surety's decision in such regard shall be binding and conclusive upon the Indemnitors.

*Id*.

The cases cited by the Plaintiff support the proposition that the voucher or other evidence of such payments is sufficient to establish liability to the Surety under the terms of their agreement. *See Commercial Union v. Melikyan*, 430 So. 2d 1217, 1221 (La. App. 1st Cir. 1983) (similar language in an indemnity agreement has been held to permit a surety the "exclusive right to determine whether the claims should be settled."); *Gray Ins. Co. v. Terry*, 2014 WL 906481 (W.D. La. Mar. 6, 2014).

The language relied upon by Plaintiff, however, still contemplates consideration of evidence beyond what Plaintiff suggests. The term "prima facie" will not be construed for the purposes of discovery to mean that the types of evidence listed in the agreement are the <u>only</u> types allowed. "Prima facie" is a term of art defined as "sufficient to establish a fact or raise a presumption unless disproved or rebutted; based on what seems to be true on first examination, even though it may later be proved to be untrue." *Black's Law Dictionary* (10th ed. 2014). Although the evidence referenced in the agreement may be sufficient establish the amount of the

6

payments and that they were made with the good faith belief of their necessity, the concept of prima facie necessarily contemplates the possibility that an adverse party may submit evidence to rebut the initial showing.

Furthermore, the cases cited by the Plaintiff do not discuss the scope of discovery or the relevance or admissibility of documents such as those sought in this litigation. In *Commercial Union,* the trial court addressed and found the payments were made in good faith, based on "[t]estimony and evidence received during trial [showing] that Commercial made repeated efforts to discuss the claims with [an indemnitor]." *Commercial Union*, 430 So. 2d at 1221. In *Gray Ins. Co*, the court noted that, "[p]ursuant to the [indemnity] agreement, [the surety] has submitted extensive records detailing legal fees, complete with precise dates and amounts, incurred by Gray…" 2014 WL 906481 at *7.

Based on the defenses raised by Defendants, portions of the documents they seek to compel are within the scope of discovery, particularly as it pertains to the amounts of costs incurred and paid. As set forth in the Motion to Compel, Plaintiff has only produced a spreadsheet listing the name of the payee, invoice number, date and dollar amount. (R. Doc. 31-1 at 6, R. Doc. 31-3). Presumably, this spreadsheet was either provided with some attestation that it represents the costs incurred by the Surety pursuant to the Indemnity Agreement or some other discovery demonstrated such. Defendants apparently rejected Western's offer to produce redacted invoices supporting this data, and question the settlement, attorney's fees, and costs accrued, also raising a defense of lack of good faith on the part of Plaintiff. To support their position, Defendants seek generally documents that may show the itemized purpose behind the fees and costs accrued and whether those fees and costs were made and incurred in good faith. Defendants have also raised concerns about the whether Western's decision to settle was based

on a separate relationship with HPA or one of its related or affiliated companies. (R. Doc. 18 at 3).

Even if all of this information is within the scope of discovery, the Court must still address whether the information is privileged and if so, whether that privilege has been waived. The Indemnity Agreement provides that Indemnitors agree to indemnify for "any payments made by the Surety in the good faith belief of their necessity." As it pertains to the Surety's decision to settle the underlying case, the Fifth Circuit has noted that "a surety does not act in bad faith by settling for an amount that the principal deems excessive." *See Engbrock v. Fed. Ins. Co.* 370 F.2d 784, 787 (5th Cir. 1967) (holding that a surety not doing what it should have done in order to limit or minimize the costs of a principal was negligence at most*).* Likewise, a surety does not act in bad faith by settling claims instead of pursuing possible defenses open to its principal. *See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718, 721 (5th Cir. 1995) (surety's settlement of litigation over principal's objections not bad faith). Under the terms of their agreement, whether PASI had a valid defense against HPA's claim was not a condition precedent to PASI's obligation to indemnify Western, such that Western's communications with its attorneys would necessarily be placed at issue in bringing this suit. *See Gray Ins. Co. v. Terry*, 606 Fed. Appx. 188, 191 (5th Cir. March 18, 2015).

Defendants assert that by bringing this suit, Plaintiffs have put their confidential communications with their attorneys "at issue" such that any privilege has been waived. If the agreement was silent on how to treat the Surety's decision to settle, then it may be the case where Western has put the mental impressions and analysis by its attorneys regarding the basis of its liability and the reasonableness of the amount paid at issue in this litigation. *See generally Conoco, Inc. v. Boh Brothers*, 191 F.R.D. 107, 117 (W.D. La, July 10, 1998) (waiver of

8

immunity despite plaintiff's position that it does not intend to rely on any withheld documents and finding that the indemnitor "will inevitably be forced to draw upon privileged communications to show that it was entitled to indemnity and that the settlement was reasonable"). In this case, however, the parties specifically agreed in the Indemnity Agreement that Western has the "**exclusive right and power** to determine for **itself** . . . whether any claim, suit, or assertion of liability . . .shall be settled" and "the Surety's decision in such regard shall be **binding and conclusive upon the Indemnitors**." (R. Doc. 36-1 at 2) (emphasis added). If the enforcement of the rights protected by the Indemnity Agreement necessarily result in the Surety waiving any privileges, the terms of the parties' negotiated agreement would be vitiated.

In turning back to the discovery requests at issue, Plaintiff claimed privilege in its responses to Request for Production Nos. 8, 9, and 10, objecting that the categories of documents Defendants seek to compel, including reports, correspondence and invoices, are subject to the attorney client and/or work product privilege. The Court has not been directed to any specific document Plaintiff claims to be subject to either the work product or attorney client privilege,[2] or any challenge by the Defendant to a particular designation, and the briefing contains no discussion or argument about the applicability of the attorney client or work product privileges to any particular document. The discovery requests at issue are directed to not only the law firm representing Western in the HPA lawsuit, but also to consultants to Western "on the Project and related claims." (R. Doc. 31-1 at 6, n.10-12). It may be that there is no dispute that the documents sought but withheld would all be subject to claims of privilege. Based on the record

---

[2] It is unclear whether Plaintiff provided a privilege log as required under Fed. R. Civ. P. Rule 26(b)(5)(A) and Local Rule 26(c). Because the Court is ruling on the general applicability of the privileges at issue, there is not a need for the Court to review a privilege log. The Court does note that the "fact that a communication takes place between a lawyer and a client is not enough, alone, to invoke the privilege," and that the "privilege must be asserted specifically as to a particular document." *Vicknair v. Louisiana Dep't of Pub. Safety & Corr.*, 555 Fed. App'x 325, 333 (5th Cir. 2014).

before it, the Court takes no position on this particular issue and notes that discovery directed to Roberts, Taylor & Sensabaugh ("RTS") is the subject of additional discovery related motions. (R. Docs. 63 and 70). In the briefing on those motions, the parties identify and address the relationship of RTS to the litigation and settlement. Should a distinction be made between the discovery regarding RTS as opposed to that pertaining the Western's attorneys, that will be addressed in the context of those motions. The Court may also permit more narrowly focused Requests for Production pursuant to Rule 34 upon resolution of those motions.

In sum, while the Court cannot pass on what documents may or may not be subject to the privileges asserted by Plaintiff, to the extent a privilege addressed above would apply, the Court finds that based on the record before it, such privileges have not been waived. The Court further finds that requiring a privilege log based on the record before it, considering the expansive nature of the requests at issue, is not warranted.

The Court recognizes that discovery in this matter has been delayed pending resolution of certain discovery related motions and new deadlines will need to be set. (R. Docs. 77 and 78). Appropriate orders will be issued upon resolution of the remaining discovery motions.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Compel (R. Doc. 31) is **DENIED**. Each party shall bear its own costs.

Signed in Baton Rouge, Louisiana, on February 6, 2019.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**