UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **WESTERN SURETY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | |
| **PASI OF LA, INC., ET AL.** | **NO. 17-1643-JWD-RLB** |

## ORDER

Before the Court is Plaintiff's Motion to Quash Subpoenas Issued to Roberts Taylor Sensabaugh, Inc. and Unopposed Motion for Expedited Consideration (R. Doc. 63) filed on December 6, 2018, and Plaintiff's related Motion for Protective Order and Unopposed Motion for Expedited Consideration (R. Doc. 70) filed on December 21, 2018. Defendants filed their Opposition (R. Doc. 69) to the Motion to Quash on December 19, 2018, and their Opposition (R. Doc. 73) to the Motion for Protective Order on December 28, 2018.

### I.  Background

Plaintiff, Western Surety Company ("Western"), initiated this litigation with the filing of its Complaint (R. Doc. 1) on November 9, 2017. Western is seeking to recover settlement amounts plus costs it paid to a third party, Harry Pepper & Associates, Inc. ("HPA"). The claims arise out of work that was to be performed under a contract between HPA and NASA at the John C. Stennis Space Center in Mississippi. HPA, the general contractor, entered into a subcontract with Defendant PASI for a portion of the work. Western issued a Subcontract Performance Bond and a Subcontract Payment Bond for PASI's scope of work, and alleges the named Defendants executed a General Indemnity Agreement in favor of Western.

In January of 2015, HPA notified PASI that it was in default on the subcontract, which subcontract was then terminated in February of 2015. (R. Doc. 1 at 6-7). HPA made demand on

Western under the Subcontract Performance Bond, which then made demand on the Defendant-indemnitors under the General Indemnity Agreement. (R. Doc. 1 at 7). HPA filed suit against Western in May of 2016. (R. Doc. 1 at 7). Western settled HPA's claims against it in August of 2017. (R. Doc. 1 at 8). HPA also filed suit against PASI arising out of the subcontract, which claims were referred to arbitration. (R. Doc. 31-1 at 4). The arbitration was heard in December of 2017 and, in January of 2018, the arbitration panel issued its final award, ordering HPA to pay damages to PASI, and finding PASI to have no liability. (R. Doc. 31-1 at 4; R. Doc. 31-6 at 10-12).

Western is seeking to recover the sums it paid to HPA in settlement, in addition to costs and attorney's fees, pursuant to the General Indemnity Agreement executed by Defendants. (R. Doc. 1).

## II.  Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii)

the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). On timely motion, the court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The moving party has the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

Rule 45 further provides "the court for the district where compliance is required" the authority to quash or modify a subpoena. Fed. R. Civ. P. 45(d)(3)(A); *see also* Fed. R. Civ. P. 45(g) ("The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.").

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

## III.    Analysis

### A.    Court of Compliance

Plaintiff seeks to quash two subpoenas. The first is a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action issued to Roberts, Taylor, & Sensabaugh, Inc. ("RTS") in the Middle District of Louisiana, naming a place of compliance in Baton Rouge, Louisiana. (R. Doc. 63-3). The second is a Subpoena to Testify at a Deposition in a Civil Action issued to Roberts, Taylor & Sensabaugh, Inc. in the Middle District of Louisiana, setting a deposition in College Station, Texas. (R. Doc. 63-4). The document production was set for 2.5 weeks prior to the date of deposition. (R. Doc. 63-3 at 1; R. Doc. 63-4 at 1).

RTS does not object to the place of compliance of either of the subpoenas, but Plaintiff argues that this Court is not the proper court to address the Motion to Quash because it is not "the court for the district where compliance is required" pursuant to Fed. R. Civ. P. 45(d)(3). This Court is, however, the court of compliance for the Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action. Furthermore, whereas Western has filed a Motion for Protective Order (R. Doc. 70) in conjunction with its Motion to Quash, which seeks to limit the proposed Rule 30(b)(6) deposition of RTS, Fed. R. Civ. P. 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move

4

for a protective order in the court where the action is pending – or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." Thus, this Court is the proper forum within which to address the issues raised.[1]

### B. Western's Claim of Privilege

In their Subpoena to Produce Documents, Defendants request the following categories of documents:

1. All documents related to communications with Western related to the Project.
2. All documents related to communications with any other party related to the Project.
3. All documents related to any reports, opinions (written or verbal), analyses of RTS in connection with this Project.
4. Al documents related to any internal notes or memoranda related to the Project.
5. All invoices and bills issued by RTS to Western for services performed in connection with the Project.
6. The communications by and between representatives of RTS and representatives of Western in connection with this Project.
7. To the extent not produced in response to any Request above, please produce Your entire file related to this Project.

(R. Doc. 63-3 at 6). Western seeks to quash the following Rule 30(b)(6) deposition topics:

3. All information underlying the analysis and findings contained within any reports referenced in Topic number 2 above.[2]
4. The communications by and between representatives of RTS and representatives of Western in connection with this Project.

*****

7. The communications by and between representatives of RTS and any other party to the extent those communications related [to] the Project.

(R. Doc. 63-4 at 6-7; R. Doc. 63-1 at 5).

---

[1] To the extent any future discovery motions raising similar issues are filed in another district pursuant to Rule 45, the parties are ordered to inform the court of compliance of the prior rulings of this court pertaining to discovery and the possibility that exceptional circumstances may exist that justify the transfer of such motions pursuant to Rule 45(f).
[2] Topic two refers to certain reports prepared by RTS.

5

Western argues that "[b]ecause the RTS Subpoenas seek the disclosure of privileged matters, they should be quashed or modified." (R. Doc. 63-1 at 5). Western also notes that, at the time of the filing of its Motion to Quash, Defendant PASI had pending a Motion to Compel Discovery (R. Doc. 31), and argues that "RTS should be under no obligation to produce documents or appear for a deposition until the Court has ruled on the Motion to Compel." (R. Doc. 63-1 at 5). Defendants argued previously that Western had placed the discovery sought "at issue" such that it has waived any privilege it may have been able to assert otherwise. (R. Doc. 31-1 at 8-11).

This Court previously concluded, with regard to the issue of whether Western has placed the documents sought "at issue" such that it has waived any privilege that may be asserted by it, that because the Indemnity Agreement between Western and HPA provided Western the "exclusive right and power to determine for itself… whether any claim, suit, or assertion of liability… shall be settled" and "the Surety's decision in such regard shall be binding and conclusive upon the Indemnitors," the "at issue" waiver was inapplicable to the facts herein. (R. Doc. 79 at 9-10). This finding did not, however, resolve the issue of privilege, and the Court went on to conclude that it was unable to address privilege as to any particular document because no document-specific argument had been advanced. (R. Doc. 79 at 10).

The Court denied PASI's Motion to Compel (R. Doc. 31) on February 7, 2019. (R. Doc. 79). Part of what PASI sought to compel therein was any and all correspondence or other documents between Western and RTS, which is essentially the same subject matter of the document subpoena seeks to quash herein. The substantive difference here is that, where the Motion to Compel sought response to discovery requests issued by the Subcontractor Defendants to the Surety Plaintiff, and the Plaintiff asserted privilege as to those documents, the document

subpoena herein was issued by the Subcontractor Defendants to a third-party consultant hired by the Plaintiff, who asserts the privilege. The general scope of the production sought is the same.

Western asserts that the documents sought from RTS by way of the subpoena are privileged, suggesting that the documents sought were prepared in anticipation of litigation, but without identifying any specific document or group of documents. (R. Doc. 63-1 at 6). Thus, Western seems to be arguing essentially that any document resulting from the relationship between it and RTS is necessarily privileged based solely on the nature of that relationship. In its Opposition to Defendants' Motion to Compel, incorporated by reference, Western argues that the communications between it and RTS "are communications between a client and its representative/non-testifying expert and as such are privileged and confidential." (R. Doc. 36 at 7).

The same result is necessary as to this instant Motion to Quash insofar as the analysis of any applicable privilege is concerned. Neither Western nor RTS has provided a privilege log for the Court to review (and presumably has not provided any such log to Defendants), and neither Western nor Defendants provide any argument regarding the applicability of the attorney-client or work product privilege as to any specific document or group of documents. The only argument advanced by Western is a blanket privilege based on the nature of its relationship with RTS, to which Defendants responds that the non-testifying expert privilege found in Fed. R. Civ. P. 26(b)(4)(D) is inapplicable. (R. Doc. 69 at 9).

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing

information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Blanket assertions of a privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (citing *United States v. Davis*, 636 F.2d 1028, 1044 n. 20 (5th Cir. 1981)). Even if the privilege contemplated by Fed. R. Civ. P. 26(b)(4)(D) were applicable as to some information sought by Defendants, a claim of privilege does not serve to protect information from disclosure based solely on the nature of the relationship between the parties involved. To the contrary, the Court and the party seeking the information must have the ability to assess the privilege claim as to each document sought to be withheld.

Western asserts the attorney-client privilege, the work product privilege, and the non-testifying expert privilege under Fed. R. Civ. P. 26(b)(4)(D), in the context of this instant Motion to Quash as well as in Opposition to Defendants' prior Motion to Compel. Western suggests that it has provided some responsive information to Defendants' written discovery, stating, "Western produced all other non-privileged communications in RTS' files which were responsive to Indemnitors' Requests for Production." (R. Doc. 63-1 at 4). There is, however, no evidence of Western having provided a privilege log as to either this Motion or the prior Motion to Compel, so the Court presumes none was provided. In an email chain attached to Defendants' Motion to Compel, counsel for Western indicates that the following two categories of documents were withheld in response to Defendants' written discovery requests:

1. Communications/Documents exchanged by and between Western and Wright, Green, PC on the basis of attorney-client and/or work product privileges.

2. Communications/Documents exchanged by and between Western, Wright, Green, PC, Roberts Taylor Sensabaugh, and Cypress Consulting on the basis of work product privilege as well as the privilege afforded to communications with non-testifying/consulting experts FRCP 26(b)(4)(D).

8

(R. Doc. 31-9 at 7). This is insufficient to constitute a privilege log as contemplated by the Federal and Local Rules, however, and does not provide Defendants or the Court adequate information by which to assess the privileges claimed. In its Memorandum in Support of Motion for Protective Order, Western sets forth its "position that Indemnitors are not entitled to the communications between and among Western and its counsel regarding conclusions or opinions held by RTS and/or Western." (R. Doc. 70-1 at 8).

Without a privilege log, Defendants are unable to address the privilege claim with regard to specific documents, and the Court is unable to address the validity of those claims. The Court will, however, provide some guidance as to the general nature of the privileges asserted, to aid the parties in discovery going forward.

The gravamen of Defendants' argument in defense of Western's claims for reimbursement of settlement amounts paid is that Western lacked good faith in its handling of the bond claim brought by HPA, and is attempting to utilize the indemnity agreement to recover costs arising from its own fault or breaches of the bond. There is no question, based in part on the district court's September 25, 2018 Findings of Fact and Conclusions of Law (R. Doc. 55), that some evidence of bad (or good) faith on the part of Western would be relevant and discoverable. Therein, the district judge denied Western's request for preliminary injunction, finding *inter alia* that the indemnitors have the burden of proving Western's bad faith, but had failed to do so at that stage in the litigation, and that "PASI has raised considerable questions and uncertainty about the issue of whether the bulk of Western's losses were truly 'incurred… as a result of having issued or procured the issuance of a Bond' and not, as PASI contends, the result of Western's own breach of its obligations under the Bond." (R. Doc. 55 at 48-49). The district

judge also found that "Western's delay in denying the performance bond claim was unreasonable." (R. Doc. 55 at 54).

This is not to say, however, that such a claim of bad faith, or findings by the district court at the preliminary injunction stage, justifies a breach of the work product or attorney client privileges, as PASI contends. Nor is every document involving RTS subject to privilege, based on the claims and defenses, and the scope of RTS's role.

PASI represents that part of the role of RTS was to assist in obtaining bids for completion of PASI's scope of work. (R. Doc. 69 at 4). To the extent RTS has documents pertaining to "obtain[ing] bids to complete the scope of work remaining on PASI's subcontract" and to "beg[i]n the process of locating and prequalifying contractors" for the project, as Defendants assert formed at least a portion of RTS's scope of work according to the Preliminary Report it issued to Western (R. Doc. 69 at 4), those documents were not created "in anticipation of litigation" and would be subject to production if any have not yet been produced.

PASI also suggests in its Answer that "Harry Pepper or one of its related or affiliated companies is a client of Western or one of its affiliates, potentially impacting and/or prejudicing Western's handling and/or defense of Harry Pepper's claim." (R. Doc. 18 at 3). The Court is likewise not satisfied that all information regarding Harry Pepper's status as a client of Western would be privileged.

Western suggests that it has not put the information sought "at issue" because the General Indemnity Agreement gives it the exclusive right to settle claims such that it need not rely on those documents to establish its position, incorporating by references the arguments it made in opposition to PASI's related motion to compel. (R. Doc. 63-1 at 6 (incorporating R. Doc. 36)). The Court previously addressed the "at issue" argument in its February 7, 2019 Order on PASI's

motion to compel, finding that the parties agreed in the General Indemnity Agreement that Western has the "exclusive right and power to determine for itself… whether any claim, suit or assertion of liability… shall be settled" and "the Surety's decision in such regard shall be binding and conclusive upon the Indemnitors." (R. Doc. 79 at 8-9 (citing R. Doc. 36-1 at 2)). As noted in that Order, to find otherwise would vitiate the terms of the parties' negotiated agreement. Thus, Western has not placed privileged documents at issue such that the question of waiver is of little relevance.

Western also argues that the non-testifying expert privilege found in Fed. R. Civ. P. 26(b)(4)(D) serves to protect the information sought by PASI. (R. Doc. 63-1 at 6). PASI responds that the non-testifying expert privileges applies only to the extent the expert is retained in anticipation of litigation, as opposed to the ordinary course of the litigant's business, and that further exception applies "to a scenario 'of exceptional circumstances under which it is impracticable for the party to obtain facts of opinions on the same subject by other means.'" (R. Doc. 69 at 9-10 (citing Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2032 (3d ed.)). The non-testifying expert privilege, found in Fed. R. Civ. P. 26(b)(4)(D), provides that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."

While the non-testifying expert privilege may serve to protect some information in the possession of RTS from disclosure, it does not establish a blanket privilege over the whole of the relationship between RTS and Western, nor does Western argue that to be the case. In fact, Western suggests that it "has only sought to limit testimony elicited from RTS to exclude privilege," and that it "has never been Western's position that Indemnitors are not entitled to

discover the activities of or facts learned by RTS in investigating the claims." (R. Doc. 70-1 at 8). Western goes on to report that it "has already produced nonprivileged portions of RTS's file, including RTS's report." (R. Doc. 70-1 at 8).

Like the work product privilege, the non-testifying expert privilege may protect information prepared in anticipation of litigation. The non-testifying expert privilege does not, however, serve to protect all information of a non-testifying expert from disclosure, nor does Western assert a privilege of such a broad application. Western notes that it "has already produced nonprivileged portions of RTS's file, including RTS's report," and that it is "Western's position that Indemnitors are not entitled to the communications between and among Western and its counsel regarding conclusions or opinions held by RTS and/or Western." (R. Doc. 70-1 at 8).

This appears to a proper categorization of the nature of applicable privilege. The fact remains, however, that the Court is unable to address whether Western has properly withheld documents pursuant to privilege without reference to specific documents or categories of documents properly recorded and described on a privilege log.

The district judge, by way of an Order (R. Doc. 78) dated January 17, 2019, cancelled the previously scheduled trial and all other deadlines, and referred the matter to the undersigned for entry of a new scheduling order and trial date. Those deadlines will be set forth by way of separate order. For purposes herein, however, the Court notes that the new scheduling order will provide new discovery deadlines for the parties, including new deadlines for the filing of discovery related motions. To the extent that any party seeks to raise an argument before the Court in the future that it has withheld information (either documentary or by way of deposition) based on the assertion of a privilege, such argument shall be accompanied by a privilege log in

compliance with Federal and local rules, and shall be narrowly tailored to specific documents or topics, as appropriate.

## IV. Conclusion

Considering the foregoing,

**IT IS ORDERED** that the Motion to Quash Subpoenas Issued to Roberts Taylor Sensabaugh, Inc. and Unopposed Motion for Expedited Consideration (R. Doc. 63) filed by Western Surety Company on December 6, 2018 and the Motion for Protective Order and Unopposed Motion for Expedited Consideration (R. Doc. 70) filed by Western Surety Company on December 21, 2018 is **GRANTED IN PART AND DENIED IN PART**. The motions are granted to the extent they seek an order from the Court finding that a blanket at issue waiver of any applicable does not apply. The Court likewise finds that certain privileges may be properly asserted in response to the discovery at issue as set forth more fully herein. The motions are denied to the extent they seek an order quashing the RTS subpoenas in their entirety or otherwise seek a finding that any particular document has been properly withheld on the basis of privilege, as no particular document or assertion of privilege has been raised.

Signed in Baton Rouge, Louisiana, on April 22, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**